J-A16007-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOHN J. ABRAHAM, M.D. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JESSICA PHILLIPS AND REID PHILLIPS | : | No. 1050 EDA 2021 |
| APPEAL OF: THOMAS JEFFERSON UNIVERSITY | : | |

Appeal from the Order Entered May 12, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  June Term, 2019 No. 06650

BEFORE:   McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:          **FILED OCTOBER 12, 2022**

Thomas Jefferson University ("Jefferson") appeals from a discovery order requiring it to produce a Title IX investigation report ("the Report") over its claim of attorney-client privilege. We affirm.

Jessica Phillips, a student and medical resident at Jefferson, filed a Title IX complaint with Jefferson against John J. Abraham, M.D., a professor at Jefferson and an attending physician at a related hospital. Phillips alleged Abraham had raped her at a party at his home. Jefferson engaged outside counsel to conduct an investigation, and counsel produced the Report.

Abraham initiated the instant lawsuit against Phillips and her husband, Reid Phillips (collectively, with Abraham, "Appellees"). Abraham brought

_____

[*] Retired Senior Judge assigned to the Superior Court.

claims of libel, slander, and related torts. The Phillipses filed counterclaims, including assault and battery. Jefferson is not a party to the lawsuit.

The Phillipses served a subpoena on Jefferson for "[a]ny and all documents pertaining to or relating to the Title IX inquiry and/or investigation and/or proceedings[.]" Objections and Response to Subpoena Pursuant to Rule 4009.21, 2/1/21, at Ex. 1. Jefferson produced some documents in response and also served objections. It objected that the subpoena, among other things, sought documents protected from disclosure by the attorney-client privilege. It provided a privilege log identifying the Report and listing it as protected by attorney-client privilege. *See* Phillipses' Motion to Compel Discovery Directed to Thomas Jefferson University, Ex. E, at 1.

Appellees filed a Joint Motion to Compel Discovery, seeking a copy of the Report. They asserted the investigation that was the subject of the Report "was conducted pursuant to the TJU Title IX Policy," rather than to secure legal services or in anticipation of litigation. Joint Motion to Compel Discovery, 4/5/22, at ¶ 4. They further argued Jefferson had "not produced any documents identifying how or why the law firm [that created the Report] was retained or who the alleged client of the law firm may have been." *Id.* They also contended that the privilege could not apply because the Report was not a "communication," "but rather a report of facts and factual findings." *Id.* at ¶ 16.

Appellees argued that even if the privilege could apply, Jefferson had waived it by disclosing the Report to third parties. According to Appellees, Dr.

Abraham is an employee of an orthopedic institute, the Rothman Institute. Appellees alleged that Jefferson had disclosed the Report to two other employees of the Institute—Drs. Alexander Vaccaro and James Purtill. *Id.* at ¶ 6. Appellees further claimed that Jefferson had disclosed the "determinations" of the Report to the Board of Directors of the Rothman Institute. *Id.*[1]

In support, Appellees attached to their motion a copy of a letter to Phillips from Jefferson's Title IX coordinator. The letter stated that Jefferson had received notice of the alleged incident, which, "if substantiated, would constitute a violation of the University's Sexual Misconduct Policy," and that "[i]t is determined that an investigation into these allegations will be conducted." *Id.*, Ex. A. The letter asked Phillips to provide the names of potential witnesses to the incident and invited her to submit a written statement. It also "highly recommended" that Phillips not discuss the incident with anyone else, "to allow the investigation to proceed without compromise." *Id.* The Motion stated that Appellees did not oppose the redaction of the names of witnesses from the Report "pursuant to any sort of confidentiality granted such witnesses." Joint Motion to Compel at ¶ 8 n.1.

Jefferson argued in opposition that it had "retained outside counsel to conduct an investigation and to render legal advice regarding the Title IX

---

[1] Appellees also argued that Abraham had filed a separate action against Jefferson in federal district court, and that "the Report will no doubt be subject to disclosure through the discovery process in that litigation[.]" Joint Motion to Compel at ¶ 12.

complaint." Memorandum of Law in Opposition to Appellees' Joint Motion to Compel Discovery, 4/19/21, at 2; **see also id.** at 6 (arguing Jefferson retained counsel "to conduct an independent and external investigation into the Title IX matter, so as to be able to provide advice to Jefferson relating to the incident and claims . . . and assess its compliance with Title IX"). Jefferson stated counsel had "conducted an extensive investigation, including conducting interviews of individuals" and that it had "advised these individuals that any information disclosed in connection with the investigation would be kept confidential." *Id.* at 4. Jefferson argued the Report was therefore protected by attorney-client privilege.

Jefferson further argued that it had not waived the privilege by disclosing the Report to any third parties. It asserted that Dr. Vaccaro and Dr. Purtill were *de facto* employees of Jefferson and therefore entitled to read the communications from Jefferson's counsel. *Id.* at 7. Jefferson also averred it had never disclosed the Report to the Rothman Institute Board of Directors. *Id.* Abraham filed a supplemental memorandum of law, pointing out that in another lawsuit, Jefferson denied having any agency relationship with Dr. Vaccaro.

The court granted the Motion in part and denied it in part. It ordered Jefferson to produce a copy of the Report, but allowed it to redact any "communications subject a claim of attorney-client privilege," which "may be subject to further review by [the c]ourt." Order, 5/11/21, at 1. In its Rule 1925(a) opinion, the court explained that it agreed with Appellees' arguments

that the witness interviews conducted by counsel were not privileged as they "were simply the factual findings within the report[.]" Trial Court Opinion, 12/22/21, at 4-5. The court also agreed with Appellees that the Report was not "secured for either an opinion of law, legal services or assistance in a legal matter" but was "made pursuant to [Jefferson's] Title IX policy." *Id.* at 4.

Jefferson filed a Notice of Appeal. It raises the following issues:

1. Whether the Trial Court erred in granting, in part, [Appellees'] Joint Motion to Compel Discovery.

2. Whether the Trial Court erred in ordering production of a Title IX Investigation Report, which was prepared by counsel for Jefferson, where Jefferson hired outside counsel to conduct an investigation and prepare a report for purposes of providing legal advice as to the Title IX matter.

3. Whether the Trial Court erred in ordering production of the Title IX Investigation Report, by failing to determine which specific portions of the report were protected from disclosure by the attorney-client privilege, or otherwise identifying the specific portions Jefferson was ordered to produce in unredacted form.

Jefferson's Br. at 4 (answers omitted).

We first address the Appellees' contention that this appeal is from an unappealable "routine discovery order," and not an immediately appealable, collateral order. *See* Phillips' Br. at 9. We must resolve this question first as it implicates our jurisdiction. *Knopick v. Boyle*, 189 A.3d 432, 436 (Pa.Super. 2018).

A collateral order is one that is "separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until

final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). As a rule, orders "overruling claims of privilege and requiring disclosure are immediately appealable" as collateral orders. ***Commonwealth v. Williams***, 86 A.3d 771, 780 (Pa. 2014) (quoting ***Commonwealth v. Harris***, 32 A.3d 243, 252 (Pa. 2011)). However, when a party contests the appealability of an order rejecting an assertion of privilege, the Pennsylvania Supreme Court has advised that "it is prudent" to resolve whether the order is truly collateral. ***Id.***

We conclude the order under review is collateral as defined by the Rule. First, the issue of whether the Report is privileged is separable from the main cause of action because it "can be resolved without an analysis of the merits of the underlying dispute." ***Id.*** at 781. The issue of whether the Report is privileged does not require any inquiry as to whether Appellees are liable for the claims made against them. Indeed, if this issue were dispositive of the underlying claims, it is unlikely that Appellees would have joined forces in this appeal.

Second, whether the Report is privileged is an issue that is too important to be denied immediate review. That is because the interests protected by attorney-client privilege "are significant relative to the efficiency interests served by the final order rule." ***Id.*** at 782. The Supreme Court has consistently "recognize[d] that exercise of a privilege is an important right deeply rooted in public policy." ***Id.*** Accordingly, the Supreme Court and this Court have allowed collateral appeals of other orders requiring the disclosure of documents purportedly protected by attorney-client privilege. ***See, e.g., In***

*re Est. of McAleer*, 248 A.3d 416, 425 (Pa. 2021); *Ford-Bey v. Prof'l Anesthesia Servs. of N. Am., LLC*, 229 A.3d 984, 988 n.4 (Pa.Super.), *appeal denied*, 242 A.3d 1251 (Pa. 2020).

Third, the claim of attorney-client privilege will be irreparably lost if the issue is put off until the case is resolved, as the trial court has ordered Jefferson to produce the Report. "Once putatively privileged material is in the open, the bell has been rung, and cannot be unrung by a later appeal." *Williams*, 86 A.3d at 784 (quoting *Harris*, 32 A.3d at 249) (brackets omitted).

As we find the test for a collateral order has been satisfied, we turn to the merits of the appeal. Whether a particular document is protected from disclosure by attorney-client privilege is a question of law. *Newsuan v. Republic Servs. Inc.*, 213 A.3d 279, 284 (Pa.Super. 2019). We therefore employ a *de novo* standard of review. *Id.* Our scope of review is plenary. *Id.*

Jefferson argues[2] the entire Report is legal advice protected from disclosure by attorney-client privilege because it was prepared for Jefferson, in response to the Title IX complaint, by counsel whom Jefferson had retained for that purpose. Jefferson contends that because it has made these assertions, it has "set forth sufficient facts showing that the privilege was properly invoked," and the burden shifts to Appellees to prove that Jefferson has waived its attorney-client privilege. Jefferson's Reply Br. at 8.

---

[2] Jefferson does not divide its argument into sections corresponding to the questions presented, in contravention of Pa.R.A.P. 2119(a).

Jefferson also argues the court erred in entering an order allowing it to redact the portions of the report subject to attorney-client privilege without first identifying the portions of the Report the court believes are privileged. Jefferson argues it was the court's duty to "perform an adequate analysis of the withheld information and determine whether the withheld information is privileged and protected from disclosure." Jefferson's Br. at 14.[3]

Attorney-client privilege is codified by statute as follows. "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa.C.S.A. § 5928. The purpose of the attorney-client privilege is to effectuate sound legal representation fostered by honest and frank communication between attorney and client. *BouSamra v. Excela Health*, 210 A.3d 967, 982 (Pa. 2019). However, because application of the privilege prevents the factfinder from considering relevant information, the privilege is to be construed narrowly, and applies only where necessary to achieve its intended purpose. *In re Est. of McAleer*, 248 A.3d at 426.

Pennsylvania applies a burden-shifting framework to the attorney-client privilege analysis. First, "[t]he party invoking the privilege must initially set

_____

[3] Jefferson also argues that it did not waive privilege by disclosing the Report to any third parties. As we determine Jefferson has failed to establish the Report is privileged, we need not address waiver.

- 8 -

forth facts showing that the privilege has been properly invoked." ***Knopick***, 189 A.3d at 439. The party must establish four elements:

1) The asserted holder of the privilege is or sought to become a client.

2) The person to whom the communication was made [or the person who made the communication] is a member of the bar of a court, or his subordinate.

3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing [or providing] either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

4) The privilege has been claimed and is not waived by the client.

***Ford-Bey***, 229 A.3d at 990-91 (citation omitted).[4] Establishing that the privilege applies "often entails an affidavit, statement, or testimony clarifying the circumstances under which the communication was made." ***Id.*** at 991.

If the party invoking the privilege has set forth sufficient facts to invoke the privilege, then the burden shifts to the party seeking disclosure. That party may overcome the claim of privilege by "setting forth facts showing that disclosure will not violate the attorney-client privilege, *e.g.*, because the privilege has been waived or because some exception applies." ***Knopick***, 189 A.3d at 439. Conversely, if the party asserting the privilege fails to carry its initial burden to invoke the privilege, "then the burden never shifts to the

---

[4] ***See Knopick***, 189 A.3d at 440 ("[I]n Pennsylvania, the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice").

- 9 -

other party, and the communication is not protected under attorney-client privilege." *Id.*; *see Custom Designs & Mfg. Co. v. Sherwin-Williams Co.*, 39 A.3d 372, 379 (Pa.Super. 2012) (holding party had failed to properly invoke attorney-client privilege where party had "not presented an affidavit, statement, or testimony by [counsel] to clarify whether [counsel] requested [party] produce the memoranda at issue or for what purpose [counsel] requested [it]").

In addition, as the privilege applies only to communications made for the purpose of providing legal assistance, it will not protect against the disclosure of underlying facts or "protect clients from factual investigations." *Custom Designs & Mfg. Co.*, 39 A.3d at 378 (citation omitted); *see also Gillard v. AIG Ins. Co.*, 15 A.3d 44, 52 n. 8 (Pa. 2011). A fact is not transformed into privileged information "solely by virtue of its having been communicated [by] counsel." *Custom Designs & Mfg. Co.*, 39 A.3d at 378.

We conclude that Jefferson failed to carry its initial burden to invoke the privilege to the entire Report. While Jefferson averred the Report was created by counsel it retained in response to a Title IX claim, Jefferson did not provide an affidavit, a copy of its agreement with counsel, or any other evidence explaining the scope or purpose of the Report. The only evidence of record on this score is the letter the Phillipses produced stating the Report would be generated as a matter of course according to Jefferson's routine internal Title IX policies. *See* Joint Motion to Compel Discovery at Ex. A. While it is possible that Jefferson's Title IX policies requiring an investigation and report may be

intended provide Jefferson with legal advice, it is also possible that the policies are intended to provide Jefferson with purely factual information. Jefferson failed to sufficiently elaborate on those policies, or specify in what manner the Report provides "either an opinion of law, legal services or assistance in a legal matter." *Ford-Bey*, 229 A.3d at 990-91; *see Custom Designs & Mfg. Co.*, 39 A.3d at 379.

Even assuming the Report was created by Jefferson's counsel in anticipation of litigation, Jefferson made no proffer regarding the contents of the Report that would lead to a conclusion that the Report is privileged in its entirety. We do not have access to the report, and Jefferson's proffer is all we have to go on. The only proffer regarding the contents of the Report has been that the Report was created using witness interviews. *See* Memorandum of Law in Opposition to Appellees' Joint Motion to Compel Discovery at 4.

Indeed, Jefferson has revealed little about the Report. It did not explain whether the Report contains recordings of the interviews, transcriptions of the interviews, or counsel's summarizations or impressions of the interviews. Nor did Jefferson assert that any of the interviewees wish to assert attorney-client privilege; that is, Jefferson did not assert that any of the interviewees are Jefferson employees, have any legal interest in the matter, sought legal advice during the interviews, or were led to believe they were confiding in counsel acting on their own behalf. Nor did Jefferson explain whether the Report contains factual data aside from witness interviews, such as photographs or telephone records. Jefferson cannot convert such materials into non-

discoverable items simply by embedding them within a "communication." ***Custom Designs & Mfg. Co.***, 39 A.3d at 378.

Ultimately, Jefferson failed to provide sufficient facts for the trial court to rule that the Report is privileged in its entirety or that any of the specific contents of the Report are privileged. The trial court therefore did not err in ordering Jefferson to produce the Report, particularly as the court's order allows Jefferson to redact any potentially privileged portions of the Report and to submit them to the court for further review.

Regarding Jefferson's argument that the court erred in failing to specify the portions of the Report that might be privileged, we find the argument waived. Jefferson never requested the court conduct an *in camera* review of the Report, or offer any explanation of the various contents of the Report, but advanced only that the Report was privileged in its entirety. Jefferson cannot make this argument for the first time on appeal. ***See*** Pa.R.A.P. 302(a).

Moreover, the cases Jefferson cites in support of this point are distinguishable. In each case, we remanded because the trial court's ruling covered multiple documents and the trial court had failed to conduct an appropriate inquiry into whether attorney-client privilege applied before broadly ordering the items discoverable.[5] Here, the trial court was considering

---

[5] In ***Gocial v. Indep. Blue Cross***, 827 A.2d 1216, 1223 (Pa.Super. 2003), the trial court deemed an entire privilege log discoverable, rather than ruling on the relevance of each item or reviewing the privileges applicable to each item. We remanded so the trial court could consider each document and
*(Footnote Continued Next Page)*

only one document—the Report—and duly considered the evidence and argument presented by Jefferson and Appellees and aptly applied the statute and jurisprudence governing the application of attorney-client privilege. Jefferson's assertion the court erred in failing to specify which portions of the Report might be privileged—when Jefferson gave the court no reason to conclude any portion is privileged—inappropriately shifts the burden of proving privilege from Jefferson to the court.

Finally, the court's order provides that Jefferson may redact any material subject to attorney-client privilege and submit it for further review. Therefore, there is nothing to prevent Jefferson from submitting the entire Report to the court for an *in camera* review, to assist Jefferson in complying with the order. In this regard, Jefferson's argument that the court has failed to adequately specify which portions of the Report are privileged is premature.

Order affirmed.

_____

observed that "*in camera* review may be required." **Id.** Similarly, in **Berkeyheiser v. A-Plus Investigations, Inc.**, 936 A.2d 1117, 1127 (Pa.Super. 2007), the trial court entered a sweeping order granting numerous discovery requests without discussing whether privilege applied or considering whether the information would lead to the discovery of admissible evidence. We remanded for the court to "consider, rule on, and explain its rulings regarding each . . . discovery request[.]" **Id.** We again advised that *in camera* review and redaction might be required. Finally, in **T.M. v. Elwyn, Inc.**, 950 A.2d 1050, 1063 (Pa.Super. 2008), we held the trial court's orders requiring the defendants to disclose all relevant documents were overly broad and remanded for a consideration of whether the attorney-client privilege applied to any of the documents covered by the orders. As in the other cases, we stated the court may conduct *in camera* review, as needed. **Id.**

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/12/2022</u>